## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| CELESTE T. ARCHER,<br><br>　　Plaintiff,<br><br>　　　v.<br><br>JOHN KROLL, in his individual capacity;<br>SUE SHARKEY, in her individual capacity;<br>NOLBERT CHAVEZ, in his individual<br>capacity; GLEN GALLEGOS, in his<br>individual capacity; HEIDI GANAHL, in her<br>individual capacity; CHANCE HILL, in his<br>individual capacity; CALLIE RENNISON,<br>in her individual capacity; LESLEY SMITH, in<br>her individual capacity; ILANA SPIEGEL, in<br>her individual capacity; KIMBERLYN<br>COOK, in her individual capacity LACEY<br>KLINDT, in her individual capacity, and<br>JOHN/JANE DOE,<br><br>　　Defendants. | No. _21-cv-2649_____<br><br><br><br>**COMPLAINT FOR DECLARATORY<br>AND MONETARY RELIEF AND JURY<br>DEMAND** |

Plaintiff Celeste T. Archer is the Executive Director of the University of Colorado Denver's National History Day in Colorado program, and a mainstay in the Denver education community. She serves on numerous boards, such as the National Conference of Governor's Schools; has received myriad awards, including being named the 2019 Defenders of Democracy by the Denver League of Women Voters; and has prepared students for success as a secondary and post-secondary educator for over 25 years, having taught at urban schools and universities in Houston, Denver, and at historic Little Rock Central High School in Arkansas.

However, on September 3, 2021, only a week before National History Day's signature showcase on September 10, 2021, she was wrongly barred from CU Denver's campus under its

COVID-19 protocols, without receiving meaningful notice or a fair hearing, purportedly based on a single false and defamatory report intended to harass and intimidate her.

Ms. Archer brings this complaint against Defendants John Kroll, Sue Sharkey, Nolbert Chavez, Glen Gallegos, Heidi Ganahl, Chance Hill, Callie Rennison, Lesley Smith, Ilana Spiegel, Kimberlyn Cook, Lacey Klindt, and John/Jane Doe in their individual capacities, as follows:

## INTRODUCTION

1.      Due process under the law is the cornerstone of modern-day American constitutional jurisprudence.  The Constitution prohibits States from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

2.      "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

3.      This right has long been recognized by the Supreme Court as fundamental.  *See, e.g., Windsor v. McVeigh*, 93 U.S. 274, 277 (1876) ("Wherever one is assailed in his person or his property, there he may defend."); *Hovey v. Elliott*, 167 U.S. 409, 417 (1897) ("[D]ue process of law signifies a right to be heard in one's defense."); *Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard.").

4.      Before an employee such as Ms. Archer can be completely targeted for exclusion from a public University's campus space, notice and an opportunity for some form of hearing are vital, since "[t]he touchstone of due process is protection of the individual against arbitrary action

of the government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citing *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).

5.      In short, "within the limits of practicability," a State must afford to all individuals a meaningful opportunity to be heard, if it is to fulfill the promise of the Due Process Clause. *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (quoting *Mullane*, 339 U.S. at 318).

6.      Here, not only was Ms. Archer denied a meaningful opportunity to be heard; she was given no opportunity whatsoever.  Rather, on September 3, 2021, she received an e-mail notification which stated that she was not allowed on campus because it had been reported that she had either been exposed to COVID-19, had COVID-19 symptoms, or tested positive for COVID-19.  *See* COVID-19 Notice E-mail, Ex. 1 ("The Contact Tracing Team has received notification that you have either been exposed to COVID-19, tested positive for COVID-19, OR having symptoms related to COVID-19.").

7.      Ms. Archer's supervisor and other colleagues were contacted either at the same time, or within a matter of minutes, with a message stating: "Celeste Archer is unable to be physically present on campus at this moment.  You will be notified once your employee is cleared to return to work. … If this employee can work from home, they may do so with your approval. This employee may not be physically present at any CU Denver or CU Anschutz facilities until they are cleared to physically return to campus."  *See* COVID-19 Colleague Notice E-mail, Ex. 2.

8.      Instead of being provided the opportunity to challenge the report or notify the school that she was the subject of a harassment campaign, or privately discuss the fact that the report was part of a harassment campaign before it had been transmitted to her colleagues, the e-mail summarily demanded that she "remain off campus" until she was cleared by a contact tracer.

COVID-19 Notice E-mail, Ex. 1.  And before being able to notify the school of the false report, Ms. Archer's colleagues had already been contacted.  In short, the harassment efforts against Ms. Archer succeeded only because of the COVID-19 alert system in place at CU Denver.

9.    Even now, CU Denver has refused to provide the name of the individual who targeted Ms. Archer for harassment, such that she cannot know whether the reporter is a colleague, a student, or another member of the university community altogether.  Nor can she know whether the individual has targeted her previously, is currently stalking her, or is preparing for another act of harassment.  She cannot file a police report with the name of her harasser.  And her ability to file an appropriate formal complaint with the University depends on whether the individual is an employee, student, or other member of the campus community.

10.    Additionally, the stress and confusion surrounding Ms. Archer's exclusion from campus and the refusal of the Defendants to identify her harasser caused her to miss a deadline related to her own class enrollment, the fee for which is $1774.64.

11.    Ms. Archer continues to suffer emotional distress due to this incident, which Defendants continue to exacerbate with their misconduct.

12.    Ms. Archer brings this lawsuit under 42 U.S.C. § 1983 against the members of the CU Board of Regents, as well as the individuals who were involved in circulating the COVID-19 notice, in their individual capacities for violating her Fourteenth Amendment Due Process rights.

13.    Ms. Archer separately brings a defamation claim against John/Jane Doe and the other Defendants.

**PARTIES**

14.     Plaintiff Celeste T. Archer resides in Denver, in the District of Colorado.   In addition to her role as Executive Director of the University of Colorado Denver's National History Day in Colorado program, Ms. Archer is also the Founder and Executive Director of the Colorado Student Leaders Institute, a summer enrichment program for Colorado high school students which seeks to reinforce the importance of civic engagement, entrepreneurship, responsibility, accountability, ethics, and integrity in the rising generation of American leaders.

15.     Defendant John Kroll is a Regent of the University of Colorado.  He is sued in his individual capacity.

16.     Defendant Sue Sharkey is a Regent of the University of Colorado.  She is sued in her individual capacity.

17.     Defendant Nolbert Chavez is a Regent of the University of Colorado.  He is sued in his individual capacity.

18.     Defendant Glen Gallegos is a Regent of the University of Colorado.  He is sued in his individual capacity.

19.     Defendant Heidi Ganahl is a Regent of the University of Colorado.  She is sued in her individual capacity.

20.     Defendant Chance Hill is a Regent of the University of Colorado.  He is sued in his individual capacity.

21.     Defendant Callie Rennison is a Regent of the University of Colorado.  She is sued in her individual capacity.

22.     Defendant Lesley Smith is a Regent of the University of Colorado.  She is sued in her individual capacity.

23.     Defendant Ilana Spiegel is a Regent of the University of Colorado.  She is sued in her individual capacity.

24.     Defendants Kimberlyn Cook and Lacey Klindt are students or employees of the University of Colorado Denver.  They are sued in their individual capacities.

25.     John/Jane Doe is an individual who reported the false COVID-19 allegations against Ms. Archer to the University.  He/she is sued in his/her individual capacity.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over this complaint under 28 U.S.C. §§ 1331 and 1343 because this case presents a substantial question of federal law, specifically whether the Defendants' individual actions in failing to provide Ms. Archer an opportunity for due process prior to her indefinite exclusion from campus violated the United States Constitution's guarantee of due process.

27.     This Court has jurisdiction over this complaint under 42 U.S.C. § 1983 for deprivation of rights under the color of law.

28.     This Court has jurisdiction over the defamation claim against John/Jane Doe through its supplemental jurisdiction, 28 U.S.C. § 1367(a).

29.     This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

30.     Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1).  A substantial part of the events giving rise to this claim occurred in this district, Defendants maintain one or

more offices and employees in this district, a substantial part of the property subject to this action is situated in this district, and a plaintiff resides in this district.

## Ms. Archer is a Public Employee Who Was Deprived of Her Due Process Rights

31.     As an employee of CU, Ms. Archer holds certain protected property rights and interests.  In particular, she holds a property interest in her public employment, in part because her employment may only be modified or terminated for a limited set of reasons, and she is entitled to notice before any such modification or termination occurs. And because she holds a property interest in her public employment, she is owed a certain level of process—at the very least, a right to a hearing.

32.     Ms. Archer's access to campus was critical to the performance of her employment duties.  Indeed, only a week after her exclusion from the campus, was National History Day's signature showcase of the year, honoring CU Denver, and for which 500 invitations had been mailed, and 23,000 e-mails had been circulated.

33.     "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004).

34.     The Tenth Circuit has explained that property interests can be created by "state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1251 (10th Cir. 2007) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  "An employee may possess a property interest in public employment if she has tenure, a contract for a fixed term, an implied promise of continued

employment, or if state law allows dismissal only for cause or its equivalent." *Darr*, 495 F.3d at 1251 (citations omitted).

35.    Under the Tenth Circuit's two-step inquiry, Ms. Archer possessed a protected interest such that the due process protections were applicable.

36.    In analyzing a due process claim, and whether appropriate processes were in place to protect the individual, courts must "ask what process the State provided, and whether it was constitutionally adequate.  This inquiry would examine the procedural safeguards built into the statutory or administrative procedure … and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).  At the very least, procedural due process requires: (1) notice, (2) the right to be heard, and (3) a hearing.  *Loudermill*, 470 U.S. at 542.

37.    The hearing itself requires: "(1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story." *Merrifield v. Bd. of Cnty. Cmmr's for Cnty. Of Santa Fe*, 654 F.3d 1073, 1077-78 (10th Cir. 2011).  Although Ms. Archer did not face termination, her property interest in public employment and fulfilling the terms of her employment were threatened when she was banned from entering campus.

## **Defendants Deprived Ms. Archer of Due Process Under Color of Law**

38.    Defendants, acting under color of state law in their individual capacities, deprived Ms. Archer of her due process rights by banning her from entering campus under the false assumption that she had COVID-19, and providing no avenue for her to defend herself.

39.     A cause of action under 42 U.S.C. § 1983 requires the deprivation of a civil right by a "person" acting under color of state law.

40.     Defendants, through their own individual actions, deprived Ms. Archer of her right to due process under the law.  This is particularly true for Kimberlyn Cook and Lacey Klindt, the CU personnel who work for the university and who were responsible for sending the COVID-19 notice e-mail to Ms. Archer.  After Ms. Archer received the e-mail notice, she reached out to the student for clarification.  The student informed Ms. Archer that "they had heard from someone who had heard that [Ms. Archer] had tested positive or might have been exposed."  *See* Archer E-mail, Ex. 3.  In other words, Ms. Archer's property interest in public employment—and all that comes with it, including freedom of movement across campus—was infringed upon solely due to hearsay.

41.     It is true that "[w]hen a plaintiff brings an action against a government official in his or her individual capacity, 'that official is generally provided with a qualified immunity against civil damages liability.'"  *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 492 (10th Cir. 1998) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "In order to avoid summary judgment based on a defendant's assertion of qualified immunity, a plaintiff must show not only that the defendant violated her rights, but also that the rights violated were 'clearly established' at the time of the violation." *Id.* (quoting *Anderson*, 483 U.S. at 639).  And "[t]o demonstrate that a right is clearly established, plaintiff must show that '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Buchwald*, 159 F.3d at 497 (quoting *Anderson*, 483 U.S. at 640).

9

42.     Not only has the right of a hearing been sufficiently stated in numerous Supreme Court cases, *see, e.g., Loudermill*, 470 U.S. at 546 ("The essential requirements of due process…are notice and an opportunity to respond."), the due process guarantee of "innocent until proven guilty" is such a central tenet of American constitutional law that any reasonable citizen, no less a government official, would understand when it is being violated.

43.     The COVID-19 pandemic is no excuse for violating constitutional rights. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 70 (2020) (Gorsuch, J., concurring) ("Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical.").

44.     An e-mail response from Chris Puckett, Managing Associate University Counsel for UC Denver, highlights that reasonable officials did indeed understand that what had occurred violated Ms. Archer's due process rights: "No one should have said you were excluded from campus.  They were moving way too fast."  Puckett E-mail, Ex. 4.

45.     Later in the e-mail, Mr. Puckett stated that "we need to slow that down" and that "[n]o one should be excluding folks from campus without a clear level of verification and information." *Id.*  These concessions, and the vast body of supporting case law, illustrate that Ms. Archer's due process rights were "clearly established" at the time of the violation, such that the defense of qualified immunity is overcome.

**CAUSES OF ACTION**
**FIRST CLAIM FOR RELIEF**
**Against all Defendants**

(42 U.S.C. § 1983 – Civil Action for Deprivation of Rights)
(Fourteenth Amendment Procedural Due Process Violation)

46.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

47.     "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Loudermill*, 470 U.S. at 541.  "The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee.  While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'"  *Id.*  (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974) (Powell, J., concurring in part and concurring in result in part)).  "In short, once it is determined that the Due Process Clause applies, 'the question remains what process is due.'"  *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

48.     The Supreme Court has described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest."  *Id.* at 542 (quoting *Boddie,* 401 U.S. at 379 (1971) (emphasis in original)); *see Roth*, 408 U.S. at 569-70 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.  When protected interests are implicated, the right to some kind of prior hearing is paramount.").

49. Defendants, in their individual capacities and acting under color of state law, violated Ms. Archer's due process rights by blocking her from campus on unverified findings of COVID-19 infection or exposure. Using their authority, and lacking any verified factual basis for doing so, Defendants deprived Ms. Archer of her federally guaranteed due process rights—first, by restricting her right to move freely throughout campus, *see Youngberg v. Romeo*, 457 U.S. 307, 316 (1982) ("[l]iberty from bodily restraint has always been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action.") (internal citations omitted), and second, by refusing to provide her an opportunity to refute the false claims that she had COVID-19 at a hearing, *see Mullane*, 339 U.S. at 314 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

## SECOND CLAIM FOR RELIEF
### Against All Defendants

(Defamation)

50. Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

51. "Defamation is a communication that holds an individual up to contempt or ridicule thereby causing him to incur injury or damage." *Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo. 1994). In deciding whether a statement is defamatory, the Court must consider whether a reasonable person could "conclude that the speaker was communicating an actual fact." *Id.* at 1303 (citing *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1360 (Colo. 1983)). Importantly, this reasonable person standard does not require that a majority believe the statement to be true.

Rather, it requires "a substantial and respectable minority" to believe the statement is factual. *Id.* at 1305. When applying the reasonable person standard, courts consider the phrasing of the statement, the context of the entire statement, and the underlying circumstances surrounding the statement. *Id.*

52.     In addition, certain statements made about others are considered by the courts to be intrinsically defamatory. To qualify as defamation per se, a libelous statement must be (1) on its face and without extrinsic proof, unmistakably recognized as injurious, and (2) specifically directed at the plaintiff. *Gordon v. Boyles*, 99 P.3d 75, 78-79 (Colo. App. 2004); *see McGettigan v. Di Mare*, 173 F. Supp. 3d 1114, 1126 (D. Colo. 2016) (A statement is per se defamatory when it carries "its defamatory imputation on its face" and is "specifically directed at a particular person."). Under Colorado law, the traditional categories of defamation per se include imputation of (1) a criminal offense; (2) a loathsome disease; (3) a matter incompatible with the individual's business, trade, profession, or office; or (4) serious sexual misconduct.

53.     Plaintiff was defamed by John/Jane Doe *per se* on the basis of a false claim that she either had or was likely to have the loathsome disease of COVID-19, or its symptoms.

54.     Plaintiff was defamed by the other Defendants who developed a COVID-19 alert system that facilitated targeted harassment to occur, and to be distributed among Plaintiff's colleagues.

## RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

A.     Enter a declaratory judgment that Defendants violated 42 U.S.C. § 1983 by depriving Ms. Archer of her due process rights under color of law.

B.      Enter an award for nominal damages.

C.      Enter an award of consequential damages.

D.      Enter an award of emotional distress damages.

E.      Award Plaintiff such costs and attorney fees as allowed by law; and

F.      Grant Plaintiff such other and further relief as the Court deems appropriate.

### JURY DEMAND

Plaintiff requests a trial by jury on all issues and claims so triable.

DATED this 29th day of September, 2021.          Respectfully submitted,

*/s/ William E. Trachman*
William E. Trachman, CO Bar #45684
Corey C. Bartkus, CO Bar #54789
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org
corey@mslegal.org

*Attorneys for Plaintiff Celeste T. Archer*